JUDGE DANIELS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**         13  CV  7074

-----------------------------------------------------------x

FIONA HAVLISH, individually and on behalf of
the ESTATE OF DONALD G. HAVLISH, JR.,
Deceased, *et al.*

                    Petitioners,

            v.

ROYAL DUTCH SHELL PLC
Carel van Bylandtlaan 30
2596 HR The Hague
The Netherlands

                   Respondent.

:   Judgment Debtors:
:
:   Islamic Republic of Iran
:   National Iranian Oil Company
:   Islamic Revolutionary Guard Corps
:   Ministry of Petroleum
:   Ayatollah Ali Hosenei Khamenei
:   Ali Akbar Hashemi Rafsanjani
:   Ministry of Information and Security
:   National Iranian Tanker Corporation
:   National Iranian Gas Company
:   National Iranian Petrochemical Co.
:   Ministry of Econ. Affairs & Finance
:   Ministry of Commerce
:   Min. of Defense & Armed Forces
:   Iran Airlines
:   Central Bank of Iran
:   Hezbollah

-----------------------------------------------------------x

RECEIVED
OCT 0 4 2013
U.S.D.C. S.D. N.Y.
CASHIERS

## PETITION FOR TURNOVER

NOW COME the *Havlish* Judgment Creditors, who are representatives of forty-seven

(47) Estates and one hundred ten (110) individual family members, all of whom are victims of

the terrorist attacks of September 11, 2001.  The *Havlish* Judgment Creditors hold an unsatisfied

judgment in the amount of $6,048,513,805, plus pre-judgment on pain-and-suffering damages,

and post-judgment interest, against the Islamic Republic of Iran and fifteen (15) of its political

subdivisions, agencies and instrumentalities.  These sixteen (16) Defendants in the *Havlish*

action, listed below in ¶ 5, are referred to collectively herein as the "Iranian Judgment Debtors."

Each of the Iranian Judgment Debtors were adjudged by this Court to be the legal equivalent of

the Government of Iran in Findings of Fact and Conclusions of Law entered on December 22,

2011, by the Honorable George B. Daniels, U.S. District Judge, in *Havlish, et al. v. bin Laden, et*

*al.*, 1:03-cv-09848 (GBD) (FM).

The Iranian Judgment Debtors are jointly and severally liable for the entire amount of the *Havlish* judgment, which is currently unsatisfied. The *Havlish* Judgment Creditors, pursuant to 28 U.S.C. §1610(g), NY CPLR 5225 (b), and NY CPLR 5227, by operation of Rule 69(a)(1), Fed. R. Civ. P., now seek the turnover and/or judgment of approximately $2,336,000,000 in funds due to the National Iranian Oil Company, one of the Iranian Judgment Debtors, which are held by Respondent/Garnishee Royal Dutch Shell, plc. In support thereof, the *Havlish* Judgment Creditors aver the following:

## THE PARTIES

1.      Petitioners are the *Havlish* Judgment Creditors ("Petitioners"), who are representatives of 47 Estates and 110 individual family members who are victims of the terrorist attacks of September 11, 2001. Petitioners obtained a judgment in the amount of $1,362,277,884 in compensatory damages, plus pre-judgment interest on 968,000,000 in pain-and-suffering damages, and $4,686,235,921 in punitive damages, plus post-judgment interest, against the Iranian Judgment Debtors for their provision of direct and material support to al Qaeda in carrying out the terrorist attacks of September 11, 2001. The relevant documents issued by the Court are attached hereto as **Exhibit A** through **Exhibit H**, as referenced in ¶¶ 23 to 30 below.

2.      Respondent and Garnishee is Royal Dutch Shell plc ("RDS" or "Respondent" or "Respondent/Garnishee"), a multi-national group of energy and petrochemical companies employing approximately ninety-three thousand (93,000) people in more than ninety (90) countries and territories. The international headquarters of RDS is located at Carel van Bylandtlaan 30, 2596 HR The Hague, The Netherlands. Respondent's registered office is located at Shell Centre, London SE1 7NA, United Kingdom. Respondent's Investor Relations Office for North America is located at 910 Louisiana Street, 4580B, Houston, TX,

2

USA.  Respondent's Depository for its American Depository Shares is located at The Bank of New York Mellon, 101 Barclay Street, New York, NY, USA.

3.      The operations of RDS and its subsidiaries worldwide are centrally managed through The Hague and London as an integrated global business.  RDS had approximately $467,153,000,000 (U.S.) in revenue during 2012, which places RDS as the highest grossing company in the world in terms of revenue.  In 2012, RDS had more than $46.14 billion (U.S.) in "net cash from operating activities;" more than $28.45 billion (U.S.) in "net cash used in investing activities;" more than $7.68 billion (U.S.) in "dividends paid;" and more than $10.63 billion (U.S.) in "net cash used in financing activities."  See **Exhibit L**, *Shell Annual Report and Form 20-F 2012*, p. 11 (March 21, 2013).

4.      Respondent RDS, prior to sanctions imposed by the United Kingdom, the United States of America, the United Nations, and/or the European Union against the Islamic Republic of Iran due to Iran's nuclear proliferation activities, regularly engaged in business with the Islamic Republic of Iran and with the Iranian Judgment Debtors, which business included, *inter alia*, purchases of Iranian crude oil from the National Iranian Oil Company.

5.      The Iranian Judgment Debtors are: (1) Islamic Republic of Iran; (2) Ayatollah Ali Hoseini Khamenei, Supreme Leader of Iran; (3) Ali Akbar Hashemi Rafsanjani, Chairman, Expediency Discernment Counsel and former President of Iran; (4) Iran's Ministry of Information and Security; (5) the Islamic Revolutionary Guard Corps; (6) Iran's Ministry of Petroleum; (7) the National Iranian Tanker Corporation; (8) the National Iranian Oil Company; (9) the National Iranian Gas Company; (10) the National Iranian Petrochemical Company; (11) Iran Airlines; (12) Iran's Ministry of Economic Affairs and Finance; (13) Iran's Ministry of

Commerce; (14) Iran's Ministry of Defense and Armed Forces Logistics; (15) the Central Bank of the Islamic Republic of Iran; and (16) Hezbollah.

6.     The National Iranian Oil Company ("NIOC") is one of the Iranian Judgment Debtors. NIOC is an oil and gas company wholly owned by the Islamic Republic of Iran through another Judgment Debtor, Iran's Ministry of Petroleum. NIOC is an agency and instrumentality of Iran as defined by §1603(b) of the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §1330; §1602 - §1611. In *Havlish, et al. v. bin Laden, et al.*, NIOC was adjudged by this Court to be an organ of the Government of Iran, an agency and instrumentality of the state of Iran, and owned, directed, controlled, and managed by the Government of Iran.. NIOC is liable to the *Havlish* Plaintiffs for $6,048,513,805 in damages, including $1,362,277,884 in compensatory damages. See **Exhibit B**, Findings of Fact entered on December 22, 2011, ¶¶ 44-45, 48-49; see also **Exhibit B**, Conclusions of Law entered on December 22, 2011, ¶¶ 33, 35, and **Exhibit E**, Final Judgment entered on October 12, 2012.

7.     Respondent RDS is currently indebted to NIOC in the amount of approximately $2,336,000,000. RDS is unable to satisfy this debt due to sanctions imposed against the Islamic Republic of Iran by the United Kingdom, the United States of America, the European Union, and/or the United Nations due to Iran's support for, and promotion of, international terrorism and Iran's development and proliferation of weapons of mass destruction.

### JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, as this cause of action arises under the laws of the United States, specifically the judgment enforcement provisions of the FSIA found at 28 U.S.C. §1610(g), and the Terrorism Risk Insurance Act of 2002 ("TRIA"), §201(a), Pub.L.No. 107-297, Title II, 116 Stat. 2337 (2002).

9.      This Court has supplemental, or ancillary, enforcement jurisdiction over this cause of action pursuant to 28 U.S.C. §1367, as this suit is brought to enforce an unsatisfied judgment entered by the Court itself. See *RCA Corp. v. Tucker,* 696 F. Supp. 845, 850 (E.D.N.Y. 1988) ("As to subject matter jurisdiction, the authorities are unanimous that a federal court maintains ancillary jurisdiction to enforce its own judgment, and that, under Rule 69, Fed. R. Civ. P., no independent jurisdictional basis is necessary to commence an enforcement proceeding against a garnishee not a party to the original suit.")

10.     This Court has personal jurisdiction over the Respondent and venue is proper in the Southern District of New York because RDS regularly conducts business within the United States, within the State of New York, and within the Southern District of New York, as more particularly described in the paragraphs that follow.

11.     RDS owns subsidiary companies that do business in the United States, including Shell Petroleum, Inc., a Delaware Corporation, which, in turn, owns all of the shares of Shell Oil Company, which is located in Houston, TX.  Shell Oil Company operates approximately twenty-five thousand (25,000) Shell-branded gas stations in the United States, including within the State of New York.  According to its website http://www.shell.us/, named "Shell in the United States," Shell operates in all fifty (50) states of the U.S. and employs more than 22,000 people in the U.S. See http://www.shell.us/aboutshell/who-we-are-2013.html (last accessed Oct. 3, 2013). Given the size of RDS' cash flows and the extent of its business operations and holdings in the U.S., referenced above, Shell has more than $2,336,000,000 in cash in the United States.

12.     RDS has two (2) classes of American Depository Shares listed on the New York Stock Exchange (Ticker: RDS.A and RDS.B), of which there are a combined 598,204,093 shares outstanding held by 8,168 owners of record with addresses in the United States.  See **Exhibit L,**

*Shell Annual Report and Form 20-F 2012*, p. 89 (March 21, 2013).  Additionally, RDS has

fourteen (14) different series of Guaranteed Notes with maturity dates between 2013 and 2042

listed on the Exchange.

      13.     Respondent RDS employs The Bank of New York Mellon, located in the

Southern District of New York at 101 Barclay Street, New York, NY, as the Depository for the

two (2) classes of American Depository Shares issued by RDS and listed on the New York Stock

Exchange.  The Bank of New York Mellon also performs substantial investor relations services

on behalf of RDS in the Southern District of New York.  These services include, without

limitation:

      (a)     Issuing, canceling, and exchanging depositary receipts for the two

classes of American Depository Shares ("ADS") issued by RDS and listed on the

New York Stock Exchange;

      (b)     Receiving from RDS all cash dividends and other cash

distributions made on the deposited shares underlying the ADS;

      (c)     Distributing such dividends to RDS's shareholders in the United

States;

      (d)     Notifying the ADS holders of shareholders' meetings of RDS, and

arranging the delivery of voting materials to RDS's ADS holders;

      (e)     Collecting fees for delivery and surrender of RDS's ADS;

      (f)     Providing investor relations services and investor relations

promotional activities on behalf of Respondent for holders of RDS's ADS; and,

      (g)     Transferring millions of dollars per year to RDS for reimbursement

of certain expenses related to the bank's functions as the Depository.

See *Shell Annual Report and Form 20-F 2012*, p. 93 (March 21, 2013).

14.    The activities of The Bank of New York Mellon on behalf of Respondent RDS in the Southern District of New York establish a principal-agent relationship under New York law.

15.    The services performed by The Bank of New York Mellon on behalf of Respondent RDS in the Southern District of New York are broader than those that are merely incidental to the listing of RDS's ADS on the New York Stock Exchange.

16.    RDS employs Ken Lawrence as the Vice President of Investor Relations, North America.  Although Mr. Lawrence is based in Houston, TX, on June 4, 2013, Mr. Lawrence delivered a presentation to potential investors in RDS at the New York Society of Security Analysts at 1540 Broadway, Suite 1010, New York, NY.  A slide shown during Mr. Lawrence's presentation lists The Bank of New York Mellon as the sole source for RDS shareholder information.  An archive of the presentation of June 4, 2013, is available at http://www.nyssa.org/Programs/NYSSAOnDemand/VIDEO1690.aspx (last accessed September 27, 2013).

17.    Mr. Lawrence actively solicited the attendees at the meeting in New York, NY to invest in shares of RDS.

18.    Respondent RDS has continuous and systematic general business contacts with the State of New York, and the Southern District of New York, such that RDS is subject to the jurisdiction of this Court despite its status as a foreign corporation.  See *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2nd Cir. 2000).

19.    Further, venue is proper in the Southern District of New York by virtue of the principal-agent relationship established between RDS and The Bank of New York Mellon, and

the continuous and systematic general business contacts with the Southern District of New York resulting therefrom.

20.    Venue is also proper in this Court because it is the forum for the federal multidistrict litigation involving claims arising from the terrorist attacks upon America of September 11, 2001. *In re Terrorist Attacks on September 11, 2001*, 1:03-md-01570 (GBD) (FM).

## FACTUAL BACKGROUND

### Timeline of the *Havlish, et. al v. bin Laden, et al.* Action

21.    On February 19, 2002, Petitioners, the *Havlish* Plaintiffs, filed a Complaint in the United States District Court for the District of Columbia, seeking to hold accountable those foreign sovereigns, persons, and entities that were responsible for carrying out the terrorist attacks of September 11, 2001. The *Havlish* Plaintiffs' cause of action relied upon the state sponsor of terrorism exception to sovereign immunity that is currently codified in the FSIA at 28 U.S.C. §1605A. The *Havlish* action was originally brought under 28 U.S.C. §1605(a)(7), and later amended to include a cause of action under §1605A after the state sponsor of terrorism exception to the FSIA was amended during the pendency of the *Havlish* lawsuit. The *Havlish* Plaintiffs' claims against a foreign sovereign that were brought under the FSIA were directed toward the Islamic Republic of Iran and fifteen (15) of its political subdivisions, agencies, and instrumentalities, identified herein as the Iranian Judgment Debtors.

22.    The *Havlish* action was transferred to the Southern District of New York pursuant to a Conditional Order of the Judicial Panel on Multidistrict Litigation and assigned docket number 1:03-cv-09848 (GBD) (FM). The *Havlish* case was consolidated with other pending lawsuits within the multidistrict litigation presided over by the Honorable George B. Daniels,

8

U.S. District Judge, and the Honorable Frank Maas, U.S. Magistrate Judge, captioned *In re Terrorist Attacks on September 11, 2001*, 1:03-md-01570 (GBD) (FM).

23.     On December 22, 2011, after nearly ten (10) years of investigation by the *Havlish* Consortium of attorneys, and after the filing of, and a public hearing on, the *Havlish* Plaintiffs' evidence, Judge George B. Daniels of this Court issued an Order of Judgment, finding that the *Havlish* Plaintiffs had presented evidence satisfactory to the Court that the Islamic Republic of Iran had provided direct and material support to al Qaeda in carrying out the attacks of September 11, 2001.  Additionally, each of the fifteen (15) political subdivisions, agencies, and instrumentalities of Iran were held to be the legal equivalent of the Government of Iran for purposes of liability under the FSIA's state sponsor of terrorism exception to sovereign immunity codified at 28 U.S.C. §1605A.  A Copy of the Order of Judgment is attached hereto as **Exhibit A**.  A copy of the Findings of Fact and Conclusions of Law entered by the Court on December 22, 2011, is attached hereto as **Exhibit B**.

24.     On July 30, 2012, U.S. Magistrate Judge Frank Maas issued a Report and Recommendation to the Honorable George B. Daniels, recommending that *Havlish* Plaintiffs be the amount of $1,362,277,884 in economic damages, pain and suffering, solatium, and $4,686,235,921 in punitive damages for a total award of $6,048,513,805, plus prejudgment interest on the Plaintiffs' non-economic compensatory damages at the rate of 4.96 percent per annum from September 11, 2001, through the date judgment would be entered.  A copy of Magistrate Judge Maas' Report and Recommendation to the Honorable George B. Daniels is attached hereto as **Exhibit C**.

25.     On October 3, 2012, U.S. District Judge George B. Daniels issued a Memorandum and Order, adopting the Recommendation of U.S. Magistrate Judge Maas in its entirety.  A copy of the Memorandum and Order is attached hereto as **Exhibit D**.

26.     On October 12, 2012, Judge Daniels issued an Order and Judgment, identifying each individual Estate and Claimant in the *Havlish* litigation and listing the specific awards made, and this Court entered final judgment in *Havlish et al. v. bin Laden, et al*.  A copy of the *Havlish* Order and Judgment is attached hereto as **Exhibit E**.

27.     On February 13, 2013, the Foreign Interests Section of the Embassy of Switzerland in Iran served notice of the final judgment in *Havlish, et al. v. bin Laden*, *et al.* upon the Islamic Republic of Iran at the Ministry of Foreign Affairs in Tehran, pursuant to the provisions for service of a judgment by diplomatic means, as provided by the FSIA at 28 U.S.C. §1608(a)(4).  The materials were refused the same day.  A copy of Embassy Note 22118 and Diplomatic Note Numbers 1011-IE through 1018-IE is attached hereto as **Exhibit F**.

28.     On May 22, 2013, the Foreign Interests Section of the Embassy of Switzerland in Iran served notice of the final judgment in *Havlish, et al. v. bin Laden*, *et al.* upon the National Iranian Oil Company at the Ministry of Foreign Affairs in Tehran pursuant to the provisions for service of a judgment by diplomatic means, as provided by the FSIA at 28 U.S.C. §1608(b)(3)(A).  The materials were refused the same day.  A copy of Embassy Note 22326 and Diplomatic Note Numbers 1051-IE through 1058-IE is attached hereto as **Exhibit G**.

29.     No appeals were taken by the Islamic Republic of Iran, NIOC, Iran's Ministry of Petroleum, or any of the other defendants in *Havlish, et al. v. bin Laden, et al.* and the time for appeal has expired.

30.    On September 12, 2013, Judge Daniels of this Court entered an Order pursuant to 28. U.S.C. §1610(c) permitting the *Havlish* Plaintiffs to execute upon property of the Iranian Judgment Debtors in order to satisfy the *Havlish* judgment.  A Copy of the Order is attached hereto as **Exhibit H**.

## State Sponsorship of Terror by the Islamic Republic of Iran

31.    Iran has been waging virtually an undeclared war against the United States and Israel for over thirty (30) years.  Iran wages this undeclared war through asymmetrical, or unconventional, strategies and terrorism, often through proxies such as Hezbollah, HAMAS, al Qaeda and others.

32.    The Secretary of State designated the Islamic Republic of Iran as a state sponsor of terrorism on January 19, 1984, and has done so every year since.  Countries designated as state sponsors of terrorism are those countries that have repeatedly provided support for acts of international terrorism.  The Secretary of State issues this determination by authority of three (3) statutes: §6(j) of the Export Administration Act of 1979, 50 U.S.C. App. §2405(j); §620A of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371; and §40(d) of the Arms Export Control Act, 22 U.S.C. §2780(d).

33.    Iran has repeatedly been found liable under the Foreign Sovereign Immunities Act, 28 U.S.C. §1330; §1602 - §1611, for deaths and injuries caused by its activities as a state sponsor of international terrorism, particularly in connection with acts perpetrated by the paramilitary terrorist organization sponsored by Iran known as "Hezbollah" or "Hizballah" meaning, the Party of God.  (Hezbollah was also a defendant in *Havlish* and is now a *Havlish* Judgment Debtor.)  Iran's involvement in international terrorism has been documented in a long line of cases in both this Court and the United States District Court for the District of Columbia.

Iran has been held liable in the courts of the United States for deadly, spectacular, and outrageous actions such as the suicide bombing of the U.S. Marine barracks in Beirut, Lebanon on October 23, 1983; the Khobar Towers bombing on June 25, 1996; the terrorist attacks of September 11, 2001, and many more.

34.     The Executive Branch of the U.S. Government has repeatedly exercised the powers afforded to it under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §1701 *et seq.*, to sanction the Islamic Republic of Iran for its state sponsorship of terror, its disruption to the Middle East peace process, its proliferation of weapons of mass destruction, and Iran's nuclear proliferation activities.  The IEEPA empowers the Executive Branch to issue Executive Orders to address such extraordinary threats to the national security, foreign policy, and economy of the United States.  See Exec. Order 12613, 52 Fed. Reg. 41940 (Oct. 30, 1987); Exec. Order 12957, 60 Fed. Reg. 14615 (Mar. 15, 1995); Exec. Order 12959, 60 Fed. Reg. 24757 (May 6, 1995); Exec. Order 13059, 62 Fed. Reg. 44431 (Aug. 21, 1997); Exec. Order 12938, 59 Fed. Reg. 59099 (Nov. 16, 1994); Exec. Order 13382, 70 Fed. Reg. 59099 (July 1, 2005).

35.     These Executive Orders, in turn, are implemented by the promulgation of regulations by the U.S. Department of State or the Department of the Treasury.  These federal regulations have created a comprehensive sanctions regime with respect to the Iran.  The Executive Orders issued pursuant to the IEEPA, and regulations promulgated thereunder, have been supplemented from time to time by Acts of Congress.

36.     On July 30, 2012, President Barack Obama, under authority granted to the President under the IEEPA and other federal statutes, issued Executive Order 13622 "in light of the Government of Iran's use of revenues from petroleum, petroleum products, and petrochemicals for illicit purposes."  Consequently, this Executive Order authorized the

Secretary of the Treasury, in consultation with the Secretary of State, to impose sanctions upon

foreign financial institutions following a determination that a foreign financial instruction has

"knowingly conducted or facilitated any significant financial transaction with the National

Iranian Oil Company (NIOC)." Exec. Order 13622, 77 Fed. Reg. 45897 (Aug. 2, 2012). A copy

of Executive Order 13622 is attached hereto as **Exhibit I**.

### The Iran Threat Reduction and Syria Human Rights Act of 2012

37.    On August 10, 2012, President Barack Obama signed into law the Iran Threat

Reduction and Syria Human Rights Act of 2012 ("ITRSHRA"), Pub. L. No. 112-158, 125 Stat.

1298 (2012). Section 312(a) of ITRSHRA pronounced that "it is the sense of Congress that the

National Iranian Oil Company and the National Iranian Tanker Company are not only owned and

controlled by the Government of Iran but that those companies provide significant support to

Iran's Revolutionary Guard Corps and its affiliates." A copy of the entire Iran Threat Reduction

and Syria Human Rights Act of 2012 can be found at:

http://www.treasury.gov/resource-center/sanctions/Documents/hr_1905_pl_112_158.pdf

(last accessed Sept. 27, 2013).

38.    Section 312(b)(4)(a)(i) of ITRSHRA required the Secretary of the Treasury, no

later than 45 days after the passage of ITRSHRA, to determine whether NIOC "is an agent or

affiliate" of the Iranian Revolutionary Guard Corps ("IRGC"). The IRGC was also a defendant

in *Havlish* and is now a Judgment Debtor of the *Havlish* Plaintiffs.

39.    The IRGC was established in the immediate wake of the 1979 Islamic Revolution

by Ayatollah Khomeinei as a parallel structure to Iran's conventional military. This action was

taken because the Ayatollah was suspicious of the commitment of the Iranian military to his

revolutionary ideals. The IRGC reports directly to Iran's Supreme Leader and is controlled

13

directly by the Supreme Leader.  The IRGC has not, and does not, report to the President of Iran and is not beholden to the regular governmental structure of the Islamic Republic; *i.e.*, the Parliament, but rather is considered the guardian, defender, and striking arm of the Islamic revolution. <u>See</u> **Exhibit B**, *Havlish* Findings of Fact, ¶¶ 23-30.

40.    The IRGC has, for more than three decades, provided terrorism training and/or funding for operations that have targeted United States citizens, including training and funding to Hezbollah.  The IRGC, and certain IRGC-related entities and individuals, have been sanctioned by the United States for activities related to Iran's nuclear program, for commission of serious human rights abuses, and most recently for activities related to human rights abuses in Syria, including repression against the Syrian people.  <u>See</u> Media Note, U.S. Department of State, dated February 10, 2010, at: <u>http://www.state.gov/r/pa/prs/ps/2010/02/136595.htm</u> (last accessed Sept. 27, 2013), a copy of which is attached hereto as **Exhibit J**.

41.    On September 24, 2012, the Department of the Treasury submitted a report to Congress that determined that the NIOC was an agent or affiliate of the IRGC.  Consequently, the property of NIOC in the United States was blocked pursuant to §104(c)(2)(E)(i) of the Comprehensive Iran Sanctions, Accountability, and Divestment Act of 2010, §312 of the Iran Act, the IEEPA, and Executive Order 13599.  <u>See</u> Letter by Adam J. Szubin, Director, Office of Foreign Assets Control to the Congress of the United States dated September 24, 2012, and attached hereto as **Exhibit K**.

42.    Section 219 of ITRSHRA amended the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. §78a - §78kk, to add new subsection (r) to the reporting requirements of the 1934 Act found at §78m.  Subsection (r), entitled "Disclosure of certain activities related to Iran," mandates disclosure of certain specified activities involving contacts with, or support for,

the Islamic Republic of Iran, or other identified persons involved in terrorism, or the creation of

weapons of mass destruction. 15 U.S.C. §78m(r)(1)(D)(i)-(iii). These disclosures are referred to

as an "Iran Notice" in EDGAR, the electronic filing system and database maintained by the

Securities and Exchange Commission.

      43.     Because Respondent RDS has two classes of American Depository Shares listed

on the New York Stock Exchange, in addition to fourteen (14) different series of Guaranteed

Notes with maturity dates between 2013 and 2042 that are also registered on the Exchange, RDS

is responsible for filing periodic reports with the Securities and Exchange Commission ("SEC")

under the 1934 Act.

      44.     Pursuant to 15 U.S.C. §78m(r), RDS disclosed on page 51 of SEC Form 20-F,

which it filed on March 21, 2013, that:

> "Currently, we have approximately $2,336 million payable to, and $11 million receivable from, National Iranian Oil Company. We are unable to settle the payable position as a result of applicable sanctions."

*Shell Annual Report and Form 20-F 2012*, Page 51 (March 21, 2013). A copy of the Shell

Annual Report and Form 20-F 2012 is attached hereto as **Exhibit L**.

      45.     NIOC is a Judgment Debtor of the Petitioner, the *Havlish* Judgment Creditors.

      46.     This action by Petitioner seeking turnover of the $2,366,000,000 in above-

referenced funds, or such amount in other fungible funds, follows.

**FIRST CLAIM FOR RELIEF**
**TURNOVER PURSUANT TO N.Y. C.V.P.L. §5225(b)**
**and/or JUDGMENT PURSUANT TO N.Y. C.V.P.L. §5227**

      47.     The above paragraphs are hereby incorporated by reference as if fully set forth

herein.

48.     Rule 69(a)(1), Fed.R.Civ.P., provides that, in an instance where a judgment creditor, such as the *Havlish* Judgment Creditors, seeks to enforce a money judgment, "[t]he procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed.R.Civ.P. 69(a)(1).

49.     Civil Practice Law and Rules 5225 (b) of the New York Code provides, in relevant part, as follows:

> (b) Property not in the possession of judgment debtor. Upon a special proceeding commenced by the judgment creditor, against a person in custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as sufficient to satisfy the judgment, to the judgment creditor and, if the amount so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

NY CPLR 5225 (b).

50.     Litigants in federal court need not commence a "special proceeding" as contemplated by CPLR article 52, because Rule 2, Fed.R.Civ.P., establishes that there is only one form of action in federal courts – the civil action. See *Northern Mariana Islands v. Millard*, 287 F.R.D. 204, 208 (S.D.N.Y. 2012) citing *Saregama India, Ltd. v. Mosley*, 2012 WL 955520 (S.D.N.Y. Mar. 20, 2012).

51.     Respondent is "a person in custody of money or other personal property in which the judgment debtor has an interest," specifically the approximately $2,336,000,000 owed by Respondent to NIOC.

52.     Civil Practice Law and Rules 5227 of the New York Code provides, in relevant part, as follows:

> Upon a special proceeding commenced by the judgment creditor, against any person who it is shown is or will become indebted to the judgment debtor, the court may require such person to pay to the judgment creditor the debt upon maturity, or so much of it as is sufficient to satisfy the judgment, and to execute and deliver any document necessary to effect payment; or it may direct that a judgment be entered against such person in favor of the judgment creditor. Costs of the proceeding shall not be awarded against a person who did not dispute the indebtedness.

NY CPLR 5227.

53.     Respondent is a "person who it is shown is or will become indebted to the judgment debtor," specifically by the approximately $2,336,000,000 owed by Respondent to NIOC.

54.     CPLR article 52 contains no express territorial limitation barring the entry of a turnover order that requires a garnishee to transfer money or property into New York from another state or a foreign country.  See *Koehler v. Bank of Bermuda Limited*, 12 N.Y.3d 533, 911 N.E.2d 825 (2009).  Further, it is well established in New York that a court, having acquired jurisdiction over a garnishee, can compel observance of its decrees by proceedings *in personam* against the garnishee within the jurisdiction.  *Koehler*, 12 N.Y.3d at 539, 911 N.E.2d at 829 citing *Douglass v. Phenix Ins. Co. of Brooklyn, N.Y.*, 138 NY 209, 219, 33 NE 938 (1893).

55.     This Court has jurisdiction over RDS as Respondent/Garnishee.

56.     Therefore, this Court is empowered to order a turnover to the *Havlish* Plaintiffs of the approximately $2,336,000,000 in funds held by Respondent/Garnishee RDS that are payable to the NIOC and/or enter judgment against the Respondent/Garnishee RDS in the sum of approximately $2,336,000,000 representing the total indebtedness of the Respondent/Garnishee RDS owed to NIOC.

**WHEREFORE**, Petitioner, the *Havlish* Judgment Creditors, respectfully request that this Honorable Court:

A.      Enter an Order restraining the use, transfer, or any other disposition of the approximately $2,336,000,000 in funds representing the total indebtedness of the Respondent/Garnishee RDS owed to NIOC;

B.      Enter an order and judgment under Civil Practice Law and Rules 5225 (b) of the New York Code in favor of Petitioner, the *Havlish* Judgment Creditors, and against Respondent/Garnishee Royal Dutch Shell plc and Judgment Debtors Islamic Republic of Iran and National Iranian Oil Company, for turnover of the approximately $2,336,000,000 in funds payable by Respondent/Garnishee to Judgment Debtor; or,

C.      Enter a judgment under Civil Practice Law and Rules 5227 of the New York Code in favor of Petitioner, the *Havlish* Judgment Creditors, and against Respondent/Garnishee Royal Dutch Shell plc for the approximately $2,336,000,000 representing the total indebtedness of the Respondent/Garnishee RDS owed to NIOC, and to pay to the *Havlish* Judgment Creditors the debt in partial satisfaction of the *Havlish* judgment, and to execute and deliver any documents necessary to effect payment.

## SECOND CLAIM FOR RELIEF
## FOREIGN SOVEREIGN IMMUNITIES ACT §1610(g)

57.      The above paragraphs are hereby incorporated by reference as if fully set forth herein.

58.      An "agency or instrumentality of a foreign state," such as Iran, is defined by the FSIA as any entity:

(1)  which is a separate legal person, corporate or otherwise, and

(2)  which is an organ of a foreign state or political subdivision thereof, or a

majority of whose shares or other ownership interest is owned by a foreign state

or political subdivision thereof, and

(3)  which is neither a citizen of a state of the United States as defined in section

1332 (c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. §1603(b).

59.     NIOC, both under 28 U.S.C. §1603(b) and the Findings of Fact and Conclusions

of Law entered on December 22, 2011, in *Havlish et al. v. bin Laden, et al.*, is an agency and

instrumentality of the Islamic Republic of Iran.  See Findings of Fact entered on December 22,

2011, ¶¶ 44-45, 48-49; see also Conclusions of Law entered on December 22, 2011, ¶¶ 33, 35.

60.     The FSIA provides that:

(g)  Property in Certain Actions
(1)  In general. – [T]he property of a foreign state against which a
judgment is entered under section 1605A, and the property of an
agency or instrumentality of such a state, including the property that is
a separate juridical entity or is an interest held directly or indirectly in a
separate juridical entity, is subject to attachment in aid of execution,
and execution, upon that judgment as provided in this section,
regardless of –
(A)  the level of economic control over the property by the
government of the foreign state;
(B)  whether the profits of the property go to that government;
(C)  the degree to which the officials of that government manage
the property or otherwise control its daily affairs;
(D)  whether that government is the sole beneficiary in interest of
the property; or
(E)  whether establishing the property as a separate entity would
entitle the foreign state to benefits in United States courts while
avoiding its obligations.

28 U.S.C. §1610(g).

61.     Because NIOC is an agency or instrumentality of the Islamic Republic of Iran,

§1610(g) empowers the *Havlish* Plaintiffs to execute upon any portion of the approximately

$2,336,000,000 in funds held by RDS in the United States as Respondent/Garnishee that is the property of NIOC and/or is an interest held directly or indirectly in Respondent/Garnishee RDS..

**WHEREFORE**, the *Havlish* Judgment Creditors respectfully request that this Honorable Court:

A.      Enter an Order restraining the use, transfer, or any other disposition of the approximately $2,336,000,000 in funds representing the total indebtedness of the Respondent/Garnishee RDS owed to NIOC; and,

B.      Enter judgment in favor of Petitioner, the *Havlish* Judgment Creditors, and against Respondent/Garnishee Royal Dutch Shell plc and Judgment Debtor National Iranian Oil Company, for the turnover of the approximately $2,336,000,000 in funds otherwise owed by Respondent/Garnishee RDS to Judgment Debtor NIOC.

## THIRD CLAIM FOR RELIEF
## TERRORISM RISK INSURANCE ACT

62.     The above paragraphs are hereby incorporated by reference as if fully set forth herein.

63.     The Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322 (2002) (codified at 28 U.S.C. §1610 note), contains provisions regarding the treatment of terrorist assets that are blocked by the United States.  These provisions explicitly permit plaintiffs who have obtained a judgment against a state sponsor of terrorism in an action brought under 28 U.S.C. §1605(a)(7) (now codified at §1605A) to access these blocked assets to satisfy their judgment.

64.     Section 201 of TRIA reads as follows:

(a) IN GENERAL – Notwithstanding any other provision of law...in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under

> section 1605(a)(7) of title 28, United States Code, the blocked assets of that
> terrorist party (including the blocked assets of any agency or instrumentality of
> that terrorist party) shall be subject to execution or attachment in aid of execution
> in order to satisfy such judgment to the extent of any compensatory damages for
> which such terrorist party has been adjudged liable.

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 (2002)

(codified at 28 U.S.C. §1610 note), §201(a).

65.    The Islamic Republic of Iran has been designated as a state sponsor of terrorism

by the U.S. Department of State since January 19, 1984.

66.    On December 22, 2011, the *Havlish* Plaintiffs obtained a judgment as to liability

against the Islamic Republic of Iran, and fifteen (15) of its political subdivisions, agencies, and

instrumentalities. The Court found that all sixteen (16) of the *Havlish* defendants provided direct

and material support to al Qaeda in carrying out the terrorist attacks of September 11, 2001. U.S.

Magistrate Judge Frank Maas issued a Report and Recommendation that the *Havlish* Judgment

Creditors be awarded, *inter alia*, $1,362,277,884 in compensatory damages. On October 3,

2012, U.S. District Judge George B. Daniels adopted in its entirety the Report and

Recommendation of U.S. Magistrate Judge Maas and ordered that of the sixteen (16) Iran-related

defendants in *Havlish* jointly and severally liable for, *inter alia*, $1,362,277,884 in compensatory

damages.

67.    A "blocked asset" for purposes of TRIA is "any asset seized or frozen by the

United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b)) or

under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C.

1701; 1702)." §201(d)(2)(A).

68.    Any asset of a terrorist party, or the agency and instrumentality of a terrorist

party, such as the funds held by RDS for payment to NIOC, are subject to seizure or being frozen

21

by the United States under the Trading With the Enemy Act (50 U.S.C. App. 5(b)) or under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701; 1702).

69.    Therefore, the funds owed by Respondent RDS are, to the extent that they are deemed within the United States, subject to being seized or frozen blocked assets that are subject to execution, or attachment in aid of execution, to satisfy the judgment as to damages issued by this Court in favor of the *Havlish* Plaintiffs in the amount of $1,362,277,884 in compensatory damages.

**WHEREFORE**, the *Havlish* Judgment Creditors respectfully request that this Honorable Court:

A.    Enter an Order restraining the use, transfer, or any other disposition of the $1,362,277,884 in funds of the Respondent/Garnishee RDS otherwise owed to NIOC; and,

B.    Enter judgment in favor of Petitioner, the *Havlish* Judgment Creditors, and against Respondent/Garnishee Royal Dutch Shell plc and Judgment Debtor National Iranian Oil Company, for the turnover of the approximately $1,362,277,884 in funds otherwise owed by Respondent/Garnishee RDS to Judgment Debtor NIOC.

## FOURTH CLAIM FOR RELIEF
## FOREIGN SOVEREIGN IMMUNITIES ACT OF 1976 - §1610(a)

70.    The above paragraphs are hereby incorporated by reference as if fully set forth herein.

71.    Section 1610(a)(7) of the FSIA states, in relevant part, that:

(a)    The property in the United States of a foreign state ... used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if—

22

*** 

> (7) the judgment relates to a claim for which the foreign state is not immune under section 1605A or section 1605 (a)(7) (as such section was in effect on January 27, 2008), regardless of whether the property is or was involved with the act upon which the claim is based.

28 U.S.C. §1610(a)(7).

72.    The approximately $2,336,000,000 in funds of RDS otherwise payable by RDS to Judgment Debtor NIOC, which is wholly owned by Judgment Debtors Iran and Iran's Ministry of Petroleum, is therefore "property in the United States of a foreign state … used for a commercial activity in the United States" for purposes of §1610(a)(7).  28 U.S.C. §1610(a)(7).

73.    Such funds are not "immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States" because the *Havlish* Judgment Creditors hold a judgment against Judgment Debtor Iran and fifteen (15) of its political subdivision, agencies and instrumentalities, one of which is Judgment Debtor NIOC (another being Judgment Debtor Iran's Ministry of Petroleum), that "relates to a claim for which the foreign state is not immune under section 1605A … regardless of whether the property is or was involved with the act upon which the claim is based."  28 U.S.C. §1610(a)(7).

**WHEREFORE**, the *Havlish* Judgment Creditors respectfully request that this Honorable Court:

A.    Enter an Order restraining the use, transfer, or any other disposition of the approximately $2,336,000,000 in funds representing the total indebtedness of the Respondent/Garnishee RDS owed to NIOC; and,

B.    Enter judgment in favor of Petitioner, the *Havlish* Judgment Creditors, and against Respondent/Garnishee Royal Dutch Shell plc and Judgment Debtor National Iranian Oil

Company, for the turnover of the approximately $2,336,000,000 in funds otherwise owed by

Respondent/Garnishee RDS to Judgment Debtor NIOC.

**FIFTH CLAIM FOR RELIEF**
**FOREIGN SOVEREIGN IMMUNITIES ACT OF 1976 - §1610(b)**

74.    The above paragraphs are hereby incorporated by reference as if fully set forth

herein.

75.    Section 1610(b) of the FSIA states, in relevant part, that:

> (b) In addition to subsection (a), any property in the United States of an
> agency or instrumentality of a foreign state engaged in commercial
> activity in the United States shall not be immune from attachment in aid of
> execution, or from execution, upon a judgment entered by a court of the
> United States or of a State after the effective date of this Act, if—
>
> ***
>
> (3) the judgment relates to a claim for which the agency or instrumentality
> is not immune by virtue of section 1605A of this chapter or section 1605
> (a)(7) of this chapter (as such section was in effect on January 27, 2008),
> regardless of whether the property is or was involved in the act upon
> which the claim is based.

76.    The approximately $2,336,000,000 in funds of RDS payable to the NIOC is

"property in the United States of an agency or instrumentality of a foreign state … engaged in

commercial activity in the United States" for purposes of §1610(b)(7). 28 U.S.C. §1610(b).

77.    These funds are not "immune from attachment in aid of execution, or from

execution, upon a judgment entered by a court of the United States" because the *Havlish*

Judgment Creditors hold a judgment against Iran and fifteen (15) of its political subdivision,

agencies and instrumentalities, one of which is Judgment Debtor NIOC (another being Judgment

Debtor Iran's Ministry of Petroleum), that "relates to a claim for which the foreign state is not

immune under section 1605A … regardless of whether the property is or was involved with the

act upon which the claim is based." 28 U.S.C. §1610(b).

24

**WHEREFORE**, the *Havlish* Judgment Creditors respectfully request that this Honorable Court:

A.    Enter an Order restraining the use, transfer, or any other disposition of the approximately $2,336,000,000 in funds representing the total indebtedness of the Respondent/Garnishee RDS owed to Judgment Debtor NIOC; and,

B.    Enter judgment in favor of Petitioner, the *Havlish* Judgment Creditors, and against Respondent/Garnishee Royal Dutch Shell plc and Judgment Debtor National Iranian Oil Company, for the turnover of the approximately $2,336,000,000 in funds otherwise owed by Respondent/Garnishee to Judgment Debtor NIOC.

Respectfully submitted,

Richard D. Hailey (SDNY Bar No. RH 3754)
RAMEY & HAILEY
9333 North Meridian Street, Suite 105
Indianapolis, IN 46260
(317) 582-0000

*Attorney for the Havlish Judgment Creditors*