USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: SEP 24 2014

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FIONA HAVLISH, individually and on behalf of the ESTATE OF DONALD G. HAVLISH, JR., Deceased, et al.,

Petitioners,

-against-

ROYAL DUTCH SHELL PLC
Carel van Bylandtlaan 30
2596 HR The Hague
The Netherlands,

Respondent.

MEMORANDUM DECISION AND ORDER

13 Civ. 7074 (GBD)

GEORGE B. DANIELS, United States District Judge:

The *Havlish* Judgment Creditors ("Petitioners") are family members and legal representatives of victims of the terrorist attacks of September 11, 2001, who hold an unsatisfied judgment of approximately $6.1 Billion against the Islamic Republic of Iran and fifteen of its political subdivisions, agencies, and instrumentalities, including the National Iranian Oil Company ("NIOC"). *See Havlish, et al. v. bin Laden, et al.*, 1:03-cv-09848 (GBD). The judgment was entered under the terrorism exception, 28 U.S.C. § 1605A, of the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1602 *et seq.* Pursuant to 28 U.S.C. § 1610(g), N.Y. C.P.L.R. 5225(b), and N.Y. C.P.L.R. 5227 (by operation of Federal Rule of Civil Procedure 69(a)(1)), Petitioners filed a petition for turnover on October 4, 2013 seeking approximately $2.3 Billion in funds owed to the NIOC. (Petition, ECF No. 1, at 2). In addition, Petitioners seek an order restraining the use, transfer or any other disposition of the property.[1]

[1] On December 4, 2013, Petitioners mailed a restraining notice to RDS, stating that RDS "is hereby forbidden to make or suffer any sale, assignment, or transfer of, or any interference with any property in which the [NIOC] as Judgment

Respondent Royal Dutch Shell plc ("RDS") is the parent company to two non-U.S. subsidiaries that together owe the NIOC the $2.3 Billion at issue. Respondent moves for an order dismissing the petition for turnover and striking the restraining notice for lack of personal and subject matter jurisdiction, under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(1), respectively, and pursuant to the doctrine of international comity. Respondent's motion to dismiss the petition and strike the restraining notice is GRANTED for lack of personal jurisdiction.

## BACKGROUND

Respondent, a holding company with wholly and partially owned subsidiaries, is a public limited company incorporated under the laws of England and Wales and headquartered in The Hague, the Netherlands. (Fermin Decl., ECF No. 24, ¶¶ 3, 5). Two of Respondent's foreign subsidiaries entered into contracts giving rise to the funds at issue: Shell Trading International, Limited ("STIL") and Shell International Trading Middle East Limited ("SITME").

STIL is a subsidiary of Respondent that is organized under the laws of England and Wales and is engaged in oil trading. (*Id.* ¶ 8). SITME is organized under the laws of Bermuda and engages in the trading and supply of oil products and liquefied natural gas through offices in Dubai. (*Id.* ¶ 11). Neither subsidiary has any "presence, assets or operations in the United States." (*Id.* ¶¶ 8, 11). "Each of STIL and SITME, and each of their direct and indirect corporate parents maintain formal requirements as independent entities." (*Id.* ¶ 12). For example, "[e]ach of them is separately incorporated, maintains substantial capital, keeps separate financial accounts and is managed by its own board of directors." (*Id.*).

From 2011 to 2012, STIL and SITME purchased and received oil and condensate from the NIOC pursuant to now-terminated term contracts and spot market purchases. (*Id.* ¶¶ 14-15).

---

Debtor, or any other above-named Judgment Debtor, has an interest, except as therein provided." (Taft Decl., ECF No. 26, Ex. A at 3).

However, they are unable to pay the NIOC the funds at issue in this action because of United Kingdom and European Union sanctions regulations that came into effect before payment was rendered.[2] (*Id.* ¶ 17). Respondent explains that these funds "are provisioned in SITME's and STIL's financial accounts." (*Id.* ¶ 16). None of the oil and condensate purchased from the NIOC was delivered to the U.S. (*Id.* ¶¶ 14-15).

**PERSONAL JURISDICTION**

It is Petitioners' burden to make a prima facie case showing that jurisdiction exists over RDS. *See MacDermid Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012); *see also Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). The allegations in the Petition must be accepted "as true to the extent they are uncontroverted by [Respondent's] affidavits." *MacDermid*, 702 F.3d at 727. Petitioners seek to establish general jurisdiction over the Respondent, alleging that "RDS regularly conducts business within the United States, within the State of New York and within the Southern District of New York[.]" (Petition ¶ 10). Moreover, Petitioners state that "Respondent RDS has continuous and systematic general business contacts with the State of New York, and the Southern District of New York, such that RDS is subject to the jurisdiction of this Court despite its status as a foreign corporation." (*Id.* ¶ 18 (citing *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000))).

Petitioners assert that they have established general jurisdiction under N.Y. C.P.L.R. § 301, or—in the alternative—under Federal Rule of Civil Procedure 4(k)(2). However, personal

---

[2] According to Respondent, those sanctions are specifically: Council Regulation (EU) No 267/2012 of 23 March 2012 EU, Council Regulation (EU) No 1263/2012 of 21 December 2012, and The Iran (European Union Financial Sanctions) Regulations 2012 (UK).

In its 2012 Annual Report and Form 20-F filed with the U.S. Securities and Exchange Commission, Respondent explained: "Currently, we have approximately $2,336 million payable to, and $11 million receivable from, [the NIOC]. We are unable to settle the payable position as a result of applicable sanctions." (Petition, Ex. 10 at 51, Shell Annual Report and Form 20-F 2012).

jurisdiction is not proper under either statute.

## I. N.Y. C.P.L.R. § 301

Whether an out-of-state corporation is amenable to suit in this Court is determined by New York law. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 102 (2d Cir. 2006). Under N.Y. C.P.L.R. § 301, a court may "exercise jurisdiction over a foreign corporation on any cause of action if the defendant is engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *See Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990) (internal citations omitted). Several factors are relevant to a finding that Respondent is "doing business" in New York, including "the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York." *Schultz v. Safra Nat'l Bank of New York*, 377 F. App'x 101, 102 (2d Cir. 2010) (citing *id.* at 1043). The Petition relies on four alleged facts to demonstrate that RDS "regularly conducts business" within New York for purposes of general jurisdiction: (1) the New York "presence" of RDS's separately incorporated U.S. subsidiaries; (2) that RDS has two classes of American Depositary Shares and fourteen different series of Guaranteed Notes listed on the New York Stock Exchange ("NYSE"); (3) The Bank of New York Mellon's role as Depositary for those two classes of shares; and (4) a 2013 investor presentation given by an employee of Shell Canada Services Ltd. in New York.[3] (Petition ¶¶ 11-17).

Petitioners explain that some of the approximately twenty-five thousand Shell-branded

---

[3] Petitioners also argue that RDS consented to jurisdiction because "[a]t least eight prominent Shell subsidiaries, including Shell Oil Company, are registered with the New York Department of State to do business and have appointed an agent for the service of process in New York." (Pet. Opp. Br., ECF No. 41, at 16, 23). These subsidiaries are not agents or departments of RDS for the reasons described below, and this argument is therefore unavailing.

gas stations in the United States are located in New York. (*Id.* ¶ 11). Shell Petroleum, Inc. and Shell Oil Company are Delaware corporations headquartered in Houston, Texas. RDS owns Shell Petroleum, Inc., which in turn owns Shell Oil Company, which in turn has a 50% interest in Motiva Enterprises LLC (a company also headquartered in Houston, Texas). (Bohan Decl., ECF No. 23, ¶¶ 4-6). "Insofar as Shell Oil Company has any interest in any of the Shell-branded retail gasoline service stations in New York State, such interests are owned through Motiva." (*Id.* ¶ 6). Moreover, these service stations are "operated, controlled and managed by independent third parties," not Motiva. (Vice Decl., ECF No. 27, ¶ 5). Even if this Court were to assume that the presence of the Shell-branded gas stations in New York is sufficient to find that an RDS subsidiary has a presence in New York, Petitioners still must show that the subsidiaries are either "agent[s]" or "mere department[s]" of RDS. *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998).

Relying on *Wiwa v. Royal Dutch Petroleum Co.*, Petitioners argue that the activities of RDS's subsidiaries are "sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available." (Pet. Opp. Br., ECF. No. 41, at 19 (quoting 226 F.3d at 95)). The court in *Wiwa* held that a subsidiary's actions can be imputed to its parent under an agency theory, and "a plaintiff need demonstrate neither a formal agency agreement, nor that the defendant exercised direct control over its putative agent." 226 F.3d at 95 (citations omitted). The Supreme Court in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), recently "expressed doubts as to the usefulness of an agency analysis, like that espoused in *Wiwa,* that focuses on a forum-state affiliate's importance to the defendant rather than on whether the affiliate is so dominated by the defendant as to be its alter ego." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) *cert. denied*, 134 S. Ct. 2888 (U.S. 2014) (citing *Daimler*,

134 S. Ct. at 760).[4]

Regardless of the impact that the *Daimler* decision has on the agency analysis, Petitioners fail to allege facts sufficient to make out a prima facie case under this theory. Unlike in *Wiwa*, here Petitioners provide no evidence of a subsidiary or office thereof in New York that functions to support and promote RDS, or that seeks RDS's approval of its major decisions. *See* 226 F.3d at 93.

In addition, Respondent's U.S. subsidiaries are not its "mere department[s]." Courts consider four factors to determine whether a subsidiary is a "mere department" of its foreign parent: "(1) common ownership, (2) financial dependency of the subsidiary on the parent corporation, (3) the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities, and (4) the degree of control over the marketing and operational policies of the subsidiary exercised by the parent." *Gundlach v. IBM Japan, Ltd.*, 983 F. Supp. 2d 389, 394-95 (S.D.N.Y. 2013) (internal quotation marks omitted) (citing *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120-22 (2d Cir. 1984)).

Petitioners claim that "operations of RDS and its subsidiaries worldwide are centrally managed through The Hague and London as an integrated global business." (Petition ¶ 3). Respondent counters that RDS and its U.S. subsidiaries, Shell Petroleum Inc. and Shell Oil Company, "[e]ach is separately incorporated, maintains substantial capital, keeps separate financial accounts and is managed by its own board of directors." (Bohan Decl. ¶ 7).

---

4 The Supreme Court's decision in *Daimler* "reaffirms that general jurisdiction extends beyond an entity's state of incorporation and principal place of business only in the exceptional case where its contacts with another forum are so substantial as to render it 'at home' in that state." *Sonera Holding B.V*, 750 F.3d at 223.

In its opposition brief and at oral argument, Petitioners pointed to additional information none of which is sufficient to find that RDS's U.S. subsidiaries are its departments or agents. For example, Petitioners noted that RDS has a "single risk based control framework" designed "to identify and limit risks" affecting all wholly-owned Shell companies, as well as companies in which RDS has a direct or indirect controlling interest. (Pet. Opp. Br. at 17-18 (citing Fermin Decl., Ex. D at 1)). However, Respondent explains that the implementation of that framework is carried out by the directors and officers of the distinct subsidiaries because "RDS does not control its [U.S. subsidiaries'] day-to-day activities." (Resp. Reply Br., ECF No. 52, at 10 (quoting Bohan Decl. ¶ 7)). The mere fact that RDS has an ownership interest in its U.S. subsidiaries does not establish that its subsidiaries are its agents or mere departments. *See NewLead Holdings Ltd. v. Ironridge Global IV Ltd.*, 14CV3945, 2014 WL 2619588, at *4 (S.D.N.Y. June 11, 2014) ("While there is common ownership, that alone is not enough to establish jurisdiction, and there is no evidence as to the remaining factors."). Petitioners concede that ownership alone is not enough. (Pet. Opp. Br. at 18). Thus, because the remaining allegations in the Petition—even taken together—fail to demonstrate that RDS has a relationship with its U.S. subsidiaries sufficient to satisfy either the agency or mere department test, this Court does not have personal jurisdiction over RDS under N.Y. C.P.L.R. § 301.[5]

[5] Consideration of the remaining allegations in the Petition does not change this determination. That RDS lists two classes of American Depositary Shares on the NYSE and issued fourteen series of Guaranteed Notes that are traded on the NYSE does not support a finding of personal jurisdiction. *See, e.g.*, *Wiwa*, 226 F.3d at 97 ("[T]he prevailing case law accords foreign corporations substantial latitude to list their securities on New York-based stock exchanges and to take the steps necessary to facilitate those listings (such as making SEC filings and designating a depository for their shares) without thereby subjecting themselves to New York jurisdiction for unrelated occurrences."). Similarly, because The Bank of New York Mellon's role as depositary is incidental to RDS listing securities on a stock exchange, (Lawrence Decl., ECF No. 25, ¶¶ 5-6), it is insufficient to establish personal jurisdiction. *See, e.g.*, *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 548-49 (S.D.N.Y. 2010); *Pieczenik v. Cambridge Antibody Tech. Group*, No. 03 Civ. 6336 (SAS), 2004 WL 527045, at *6 (S.D.N.Y. Mar. 16, 2004); *Wiwa*, 226 F.3d at 98 ("[A] company is not 'doing business' in New York merely by taking ancillary steps in support of its listing on a New York exchange."). Finally, a single investor presentation by Ken Lawrence, an employee of Shell Canada

## II. Federal Rule of Civil Procedure 4(k)(2)

In the alternative, Petitioners claim that there is general jurisdiction under Federal Rule of Civil Procedure 4(k)(2). "This Rule, which is commonly known as the federal long-arm statute, permits federal courts to exercise personal jurisdiction over a defendant that lacks contacts with any single state if the complaint alleges federal claims and the defendant maintains sufficient contacts with the United States as a whole." *Getz v. Boeing Co.*, 654 F.3d 852, 858 (9th Cir. 2011). Rule 4(k)(2) provides for personal jurisdiction where (1) the claim "arises under federal law," (2) "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction,"[6] and (3) "exercising jurisdiction is consistent with the United States Constitution and laws." The Petition, which seeks turnover of the NIOC's funds under N.Y. C.P.L.R. §§ 5225(b) and 5227, does not allege substantive federal claims.

The advisory committee notes to Rule 4(k)(2) make clear that the statute was specifically designed to "correct[] a gap in the enforcement of federal law":

> This narrow extension of the federal reach applies only if a claim is made against the defendant under federal law. It does not establish personal jurisdiction if the only claims are those arising under state law or the law of another country.

Fed R. Civ. P. 4 advisory committee's note, 1993 Amendments; *see also Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 127 (2d Cir. 2008). Moreover, Circuit Courts that have considered the reach of Rule 4(k)(2) have found that its application is limited to substantive federal

Services Ltd. who is based in Calgary, Canada, during one meeting in New York does not support general personal jurisdiction over RDS.

6 Petitioners certify that RDS is not subject to personal jurisdiction in any state other than New York. (Pet. Opp. Br. at n.9). Despite Petitioners' certification, RDS appears to have greater contacts with Texas (the site of RDS's investor relations office and the principal place of business of some of RDS's subsidiaries) and Delaware (the state of incorporation of many of RDS's U.S. subsidiaries) than it does with New York.

claims. *See Getz v. Boeing Co.*, 654 F.3d at 858 ("[T]he commentary to the Rule and the well-reasoned decisions of our sister courts agree that Rule 4(k)(2)'s reach is limited to substantive federal claims."); *United States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 42-46 (1st Cir. 1999); *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 720-24 (5th Cir. 1996). Here, the execution on the underlying judgment is controlled by the "procedure of the state where the court is located," and therefore the claim in this action arises under New York law. *See* Fed. R. Civ. P. 69(a)(1) ("The procedure on execution . . . must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.").

Petitioners rely on language in *Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518(KBF), 2013 WL 1155576, at *17 (S.D.N.Y. Mar. 13, 2013), to argue that an action for execution on a judgment under § 1605A of the FSIA is a federal claim within the meaning of Rule 4(k)(2). However, the dicta that Petitioners cite from *Peterson* was not intended to confer personal jurisdiction under Rule 4(k)(2) in a state-law enforcement action absent a substantive federal claim alleged in that same action.[7] Respondent RDS had no involvement in the underlying proceeding brought by Petitioners under the FSIA against Iran and its agents and instrumentalities. Section 1610(g) of the FSIA, which Petitioners argue is the basis for this Court's subject matter jurisdiction, only serves to lift the general immunity afforded to a sovereign's assets; it is not itself a claim against RDS under substantive federal law.[8] Instead, the claim is for the turnover of funds pursuant to state-law turnover provisions. Thus, Rule 4(k)(2) is not available for the exercise of

[7] There was no substantive analysis of the federal claim, nor was there such a dispute presented by the parties in *Peterson*.

[8] To the extent that Petitioners interpret *Peterson* as taking a contrary position to that taken in the Circuits that have clearly addressed this issue, this Court disagrees with such a contrary view.

personal jurisdiction over RDS.[9]

### III. Jurisdictional Discovery

For the first time in their opposition brief, Petitioners argue that at a minimum they should be entitled to jurisdictional discovery. It is within this Court's discretion to determine if jurisdictional discovery is appropriate where Petitioners have failed to make a prima facie case for personal jurisdiction. *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 401 (2d Cir. 2009) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007)). Petitioners have not demonstrated how discovery would unearth yet unknown facts about Respondent's contacts with New York.

Petitioners have failed to make a prima facie case that personal jurisdiction is proper under N.Y. C.P.L.R. § 301 or Federal Rule of Civil Procedure 4(k)(2). Respondent's motion to dismiss for lack of personal jurisdiction is granted. Petitioners' request for jurisdictional discovery is denied.[10]

---

[9] Even if Rule 4(k)(2) were to apply, the facts that Petitioners highlight to show RDS's connections to the U.S. are inadequate. For example, Petitioners explain that there are 25,000 Shell-branded gas stations in the U.S.; there are production facilities, refineries and/or chemical plants of RDS subsidiaries in certain U.S. states (not including New York); One Shell Square and One Shell Plaza are among the tallest buildings in their respective states, Louisiana and Texas; and in certain press statements, RDS executives have not distinguished between RDS and its subsidiaries. (Pet. Opp. Br. at 15-18).

[10] Respondent also argues that this action should be dismissed for lack of subject matter jurisdiction on the grounds that 28 U.S.C. § 1610(g) does not have extraterritorial reach. (Resp. Br., ECF No. 22, at 10-13). In the alternative, it argues that this case should be dismissed because the principles of international comity so require. (*Id.* at 28-33 (arguing that this Court "should exercise its discretion to dismiss the case on the grounds of international comity because RDS could not cause the Payable to be transferred to Petitioners without violating sanctions imposed by the United Kingdom and European Union")). Because Petitioners did not make a prima facie case for personal jurisdiction, this Court need not address Respondent's additional arguments for dismissal, except to note that in opposing the motion to dismiss, Petitioners did not renew their previous position that subject matter jurisdiction also exists under 28 U.S.C. §§ 1610(a) and (b) and the Terrorism Risk Insurance Act of 2002, 28 U.S.C. § 1610(Note).

**CONCLUSION**

Respondent's motion to dismiss the petition and strike the restraining notice is GRANTED.

The Clerk of the Court is instructed to close the motion at ECF No. 21.

Dated: New York, New York
September 24, 2014

SO ORDERED:

GEORGE B. DANIELS
United States District Judge